# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **JERVOD SIMMONS,** | ) | Civil Action No. 7:14-CV00556 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | By: Hon. Norman K. Moon |
| **CORRECTIONS,** *et al.*. | ) | United States District Judge |
| | ) | |

Jervod Simmons, a Virginia inmate proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 alleging a violation of his Eighth Amendment rights. Dkt. No. 22. Simmons' Amended Complaint named ten defendants, including Lieutenant David Greer ("Lt. Greer"). *Id.* Pursuant to a settlement agreement, Simmons and nine of the defendants filed a joint motion to dismiss. Dkt. No. 39. Lt. Greer, who is now retired, was not a party to either the settlement agreement or the joint motion to dismiss. The terms of the settlement were approved and the joint motion to dismiss was granted in an order dated March 13, 2015. Dkt. No. 46. Consequently, the only remaining defendant in this case is Lt. Greer, who has filed both a motion to dismiss and a motion for summary judgment. Dkt. Nos. 59, 60, 61. Having considered the pleadings and the applicable law in this case, I conclude that Lt. Greer's motion for summary judgment should be granted. As Lt. Greer is the last remaining defendant, this award of summary judgment terminates the case, and it will be dismissed with prejudice and stricken from the active docket of this court.

# I. FACTUAL BACKGROUND

Simmons' complaint arises out of a confrontation he had with prison officials, first at his cell and then later on the way to the infirmary. In his complaint, Simmons alleges that on the morning of September 10, 2013, at Wallens Ridge State Prison, Correctional Officers Roberts and Nunley arrived at Simmons' cell to transport him to his outdoor recreational time. Dkt. No. 22. Simmons claims that while at his cell, Nunley said, "hurry up boy," which offended Simmons. *Id.* Simmons told Nunley not to disrespect him, to which Nunley responded "this boy has a big mouth." *Id.* Nunley then placed handcuffs and shackles on Simmons to prepare him for transport. *Id.* Nunley "forcefully jerked" Simmons to his feet and Simmons laughed at him. *Id.* Officers Roberts and Nunley transported Simmons a few steps outside his cell before determining that he was being too disruptive and returning him to his cell. *Id.* At this point an altercation occurred.

Simmons alleges that Nunley pushed him into his cell and that Nunley and Roberts then "slammed" Simmons to the floor out of view of the pod camera. *Id.* Nunley then began punching Simmons with closed fists in the head and face. *Id.* At this time, Roberts stood in the cell door and called for back-up. Simmons alleges that "once the other defendants arrived they proceeded to hit and kick the plaintiff as well. The plaintiff was at no time physically resisting any defendant at anytime while in full restraints (handcuffs and shackles) while being held down by unknown defendants in the cell." *Id.* Simmons claims that Nunley "busted both the plaintiffs [sic] lips, inside bottom lip, nose, placed a bruise under [his] left eye and a small cut on [his] right cheek." *Id.*

During the altercation, Simmons states that Defendant Stanley "fondled [his] penis then started to knee [him] in [his] penis" and kick him. *Id.* Defendant Smith also yelled at Simmons

2

and then kicked him repeatedly in the head. Defendant Cochrane stood at the cell door holding a video recorder. Once the altercation ended, Defendant Kinser entered the cell and instructed the other officers to clean up the blood on the floor and wall. *Id.* The defendants then transported Simmons to the infirmary. During this trip, Simmons complained about the tightness of his shackles and handcuffs.

At some point during the walk to the infirmary, the group encountered Lt. Greer, who "instructed the defendants holding [Simmons] to take [him] to the ground even though [he] never resisted." *Id.* The medical staff then treated Simmons for his injuries and took photographs of his face. Simmons made no allegations as to the manner in which he supposedly was taken to the ground at Lt. Greer's direction or whether he suffered any additional injury from this action.

In support of his motion for summary judgment, Lt. Greer filed a declaration in which he states he was not present at the time of Simmons' initial altercation with the other officers at Simmons' cell. Dkt. No. 60-1. Lt. Greer states that he responded to the medical building when he heard about the incident and encountered Simmons "screaming, yelling, thrashing and being non-compliant as he was being escorted" to the infirmary. *Id.* As a supervisor, Lt. Greer instructed the officers "to gain control of the Plaintiff and place him on the ground due to the Plaintiff's behavior and for the safety of everyone." *Id.* Lt. Greer spoke to Simmons and the situation de-escalated without any physical contact between Lt. Greer and Simmons. *Id.*

In response to Lt. Greer's declaration, Simmons submitted his own affidavit. Dkt. No. 65. In it, Simmons does not directly refute Lt. Greer's version of the facts. Instead, Simmons makes passive statements like "[I] have seen no evidence that Defendant Greer did not intentionally interject himself against plaintiff for the sole purpose to cause injury, damage, pain and suffering by any means necessary exists, and I believe no such evidence exists" and "[I] have seen no

3

evidence that when Defendant Greer ordered his officers to force the plaintiff to the ground [sic] was for the purpose to [sic] bring the plaintiff in compliance exists and I believe no such evidence exists." *Id.*

After the incident, Simmons arrived at the infirmary where two nurses examined his injuries. The prison staff took photographs of Simmons' face, cleaned him up, and returned him to a different cell. Simmons utilized the inmate grievance procedures to complain about the officers' treatment and there are no issues regarding exhaustion of administrative remedies.

## II. STANDARD OF REVIEW

An award of summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party may not rely upon mere allegations or denials contained in its pleadings but must come forward with some form of evidentiary material allowed by Rule 56 demonstrating the existence of a genuine issue of material fact requiring a trial. *Liberty Lobby, Inc.,* 477 U.S. at 248–49; *Celotex,* 477 U.S. at 324.

"In reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *see also Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) (at the summary judgment stage, "[i]t is not [the court's] job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe"). Detailed, factual allegations in a verified, pro se complaint may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.") (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). However, the evidence relied upon must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (holding that the district court properly refused to consider inadmissible hearsay in an affidavit filed with a motion for summary judgment).

### III. DISCUSSION

Simmons did not file a brief in response to Lt. Greer's motion for summary judgment. Instead he filed only his affidavits in response to Lt. Greer's declaration. Dkt. No. 65, 69. However, it appears that Simmons nevertheless contests Lt. Greer's motion and I have treated the case as if this were a contested motion.

5

Nowhere in Simmons' complaint or his affidavits does he specify how Lt. Greer used excessive force against him. The only allegations that specifically mention Lt. Greer stem from Lt. Greer's orders to the other officers. There is no allegation that Lt. Greer ever came into physical contact with Simmons.[1] In his affidavit responding to Lt. Greer's allegations, Simmons again fails to point to any physical contact Lt. Greer made with him or to any injury Simmons suffered at the hands of Lt. Greer or because of directions given by Lt. Greer. After liberally construing Simmons' claim and viewing all inferences in a light most favorable to him, I must conclude that Lt. Greer is entitled to summary judgment in his favor.

The Eighth Amendment does not prohibit every application of force or infliction of pain against prisoners. *United States. v. Gore,* 592 F.3d 489, 494 (4th Cir. 2010). "After incarceration, only the 'the unnecessary and wanton infliction of pain'" rises to the level of a constitutional violation. *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). When an inmate claims officers used excessive force against him, the court asks two questions: whether a specific prison official subjectively acted "with a sufficiently culpable state of mind" and whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian,* 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

---

[1] At paragraph 5 of his complaint, Simmons writes that "once the other defendants arrived they proceeded to hit and kick the plaintiff as well." This general, conclusive statement in the complaint cannot withstand the specific, conflicting version of facts as stated by Lt. Greer in his affidavit. *Williams*, 952 F.2d at 823 (noting that "[a]s a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." (citing *Celotex*, 477 U.S. at 324)); *cf. Marcantonio v. Dudzinski*, -- F. Supp. 3d --, No. 3:15-CV-00029, 2015 WL 9239009, at *5 (W.D. Va. Dec. 17, 2015) ("In the Fourth Circuit and elsewhere, courts have interpreted *Twombly* and *Iqbal* to mean that generic or general allegations about the conduct of 'defendants,' without more, fail to state a claim.").

In deciding the subjective prong, the court asks whether officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 7 (quoting *Whitley,* 475 U.S. at 320–21). In *Whitley,* the Supreme Court recognized that relevant factors to consider in this inquiry are (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible officials based on the facts known to them, and (5) any effort made to temper the severity of a forceful response. *Id.* at 321.

"In recognition that the prison environment is a dangerous one for correctional officers, prison administrators must be accorded 'wide-ranging deference' to design and implement policies and practices that in their judgment are necessary for the preservation of order and security." *Stanley v. Hejirika,* 134 F.3d 629, 634 (4th Cir. 1998) (quoting *Whitley,* 475 U.S. at 321–22). Likewise, courts "must accord due deference to an officer's efforts to restrain a[n] [inmate] when faced with a dynamic and potentially violent situation; [to do] otherwise [would be to] give 'encouragement to insubordination in an environment which is already volatile enough.'" *Scarbro v. New Hanover Cnty.,* 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed,* 195 F.3d 692, 697 (4th Cir. 1999)).

In addressing the less demanding, objective component under *Hudson,* the court asks whether the force applied was "nontrivial." *Wilkins v. Gaddy,* 559 U.S. 34, 39 (2010). The objective inquiry is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[W]hen prison officials maliciously and sadistically use force to cause harm," these standards are always violated "whether or not significant injury is evident." *Id*. at 9. Nevertheless, the extent of the inmate's injury is relevant as it "may suggest 'whether the use of force could plausibly have been thought necessary' in a

7

particular situation" or may "provide some indication of the amount of force applied." *Wilkins,* 559 U.S. at 37 (quoting *Hudson,* 503 U.S. at 7).

In this case, Simmons' excessive force claim fails for two reasons. First, he has neither alleged nor demonstrated that any use of force attributable to Lt. Greer was wantonly inflicted for a purpose other than to restore discipline upon encountering an unruly and non-compliant inmate. Second, Simmons has not alleged any injury that arose from his encounter with Lt. Greer; indeed, Simmons has not alleged that Lt. Greer injured him at all.

Simmons' Amended Complaint alleges that while being transported to the medical department at Wallens Ridge he encountered Lt. Greer, who ordered the transporting officers to "take [him] to the ground even though [he] never resisted." Simmons does not allege any specific injuries arising out of this encounter.[2] Lieutenant Greer claims, by way of declaration, that he was not at Simmons cell during the initial altercation, but came upon Simmons as he was being transported to the infirmary. Lt. Greer claims when he encountered Simmons, Simmons was "screaming, yelling, thrashing, and being non-compliant." In response, Lt. Greer ordered the transporting officers to subdue Simmons until he calmed down. Simmons filed a responsive affidavit; however, the response failed to specifically refute any of the issues raised by Lt. Greer in his declaration.

---

[2] It is unclear from Simmons' Amended Complaint whether Simmons is alleging that Lt. Greer was present during the altercation at Simmons' cell. However, Lt. Greer's declaration unequivocally asserts that he was not present in A Building (where Simmons' cell was located) at the time of the initial altercation. Dkt. No. 60-1. In his responding affidavit, Simmons does not contest this statement and offers no specific facts to contradict it. On a motion for summary judgment the moving party has the initial burden of demonstrating the absence of any material issue of fact. *Celotex*, 477 U.S. at 323. Once the moving party meets their initial burden the nonmoving party must come forward with some form of evidentiary material demonstrating the existence of a genuine issue of material fact requiring trial. *Anderson*, 477 U.S. at 248–49. General, conclusive statements, such as those contained in Simmons' response are not sufficient to raise a genuine issue of material fact. *See Carr v. Cent. Piedmont Action Council*, 101 F. Supp. 2d 839 (W.D. Va. 2000).

In *Wilkins v. Gaddy*, the Supreme Court clarified that the "core judicial inquiry" in excessive force cases is not the extent of injury, but rather the nature of the force applied—specifically, whether it was nontrivial and "was applied . . . maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (quoting *Johnson v. Glick*, 481 F.2d at 1033).

Here, Simmons has failed to allege any injury stemming from his encounter with Lt. Greer on his way to the infirmary. Lt. Greer's unrefuted declaration indicates that he was not present at the altercation at Simmons' cell (during which Simmons claims he sustained injuries to his lips, nose, eye, and cheek), but that he later encountered with Simmons while officers were transporting him to the infirmary. Lt. Greer's response to encountering a "non-compliant" Simmons was to instruct the transporting officers to place Simmons on the ground until he calmed down. This use of physical force will not give rise to an Eight Amendment violation, provided the force is not of the sort repugnant to the conscience of mankind. *Wilkins*, 559 U.S. at 38–39. I cannot conclude, on these facts, that ordering transporting officers to place a non-compliant prisoner on the ground to regain control of him is "repugnant to the conscience of man." Taking the record as a whole, any force ordered by Lt. Greer was ordered in a "good-faith effort to maintain or restore discipline." In short, the facts put forth by Simmons fail to satisfy either the subjective component contained in *Whitley* or the objective component as stated in *Wilkins*. Having failed to meet the relevant thresholds in *Whitley* and *Wilkins*, Simmons cannot prove a constitutional violation; it follows that there is no genuine issue for trial.

## IV. CONCLUSION

For the reasons stated, I conclude that Lt. Greer's motion for summary judgment must be granted. An appropriate order will issue. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to Simmons.

DONE this 28th day of March, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE